**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sun State Towers LLC, | No. CV-25-08014-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| County of Mohave, et al., | |
| Defendants. | |

Before the Court are Plaintiff Sun State Towers's Motion for Summary Judgement (Doc. 30) and Defendant Mohave County's Motion for Summary Judgment (Doc. 28). The motions are fully briefed (Docs. 28, 3034), and the Court heard oral argument on the motions.

**I.    BACKGROUND**

This case arises out of Mohave County's denial of Sun State Towers's application for a special use permit that would have permitted Sun State Towers to build a 195-foot wireless communications facility. (Doc. 29 ¶¶ 1, 19.) Plaintiff is Sun State Towers LLC, a company specializing in cell tower development, and Defendants are the County of Mohave and its Board of Supervisors. (Doc. 1 ¶¶ 2, 4.) Sun State Towers submitted the Application to the County on September 4, 2024. (Doc. 29 ¶ 5.) The Application contained propagation maps and predictive models of coverage that show signal strengths with and without the proposed tower. (*Id.* ¶¶ 6, 12.) The parties agree that the information provided in the Application shows that the proposed tower would improve service by filling a gap

in coverage. (*Id.* ¶¶ 6-7.) But the Application did not address the feasibility of alternative sites. (*Id.* ¶ 5.)

The Mohave County Planning and Zoning Committee considered the Application first and recommended its approval because of the proposed plan's compliance with the Mohave County General Plan and all applicable Mohave County ordinances. (*Id.* ¶¶ 15-16.) The Board held a public hearing on the Application on December 2, 2024, where three members of the public spoke in opposition to the Application, and Sun State Towers's representative spoke in favor of it. (*Id.* ¶¶ 17, 18; Doc. 29-4.) Members of the public opposed the Application based on the following concerns: property devaluation, the tower's lack of proximity to power and maintained roads, the tower's visual intrusion on the landscape, the tower's size, the tower's proximity to adjacent residential lots and a planned airstrip, and the possibility of adverse health effects from radio frequencies. (Doc. 29-4 at 52-54.) Sun State Towers's representative was primarily asked about whether Sun State Towers reviewed alternative locations for the tower. (*Id.* at 54-55.) The representative stated that "[Sun State Towers has] looked at other sites in the area" and apologized that he could not be "super specific" because "[he had] taken this site over . . . maybe two or three weeks ago." (*Id.* at 54.) He went on to explain that Sun State Towers sent letters to landowners three years prior to the hearing, and the carrier approved this site based on Sun State Towers' "due diligence." (*Id.* at 55.) The Board voted to deny the Application. (Doc. 29 ¶ 19.)

The Board issued a written denial, which states:

"[T]he Board of Supervisors of Mohave county who voted in favor of the denial, denied for the following reasons:
    Public Concern of Mohave County Residents
    Public Opposition at the Public Hearing
    Proximity to Neighboring Residents
    Poor Aesthetic Location to the Tower

(*Id.* ¶ 23.) The Board explicitly referenced and incorporated the testimony from the December 2, 2024, hearing into its written denial. (*Id.*)

Sun State Towers sued Mohave County and the Board for violations under the

Telecommunications Act of 1996. (Doc. 1.) All claims arise under 47 U.S.C. § 332(c)(7). (*Id.* ¶¶ 89-111.) First, Sun State Towers alleges that the County's denial amounts to a prohibition of wireless services in violation of the Act's provision barring local governments from "prohibit[ing] or hav[ing] the effect of prohibiting the provision of personal wireless services." (*Id.* ¶¶ 89-96); 47 U.S.C. § 332(c)(7)(B)(i)(II). Second, Sun State Towers alleges that the denial is unlawful under the Act's provision that requires a local government's denial to "be in writing and supported by substantial evidence contained in a written record." (*Id.* ¶¶ 97-105); 47 U.S.C. § 332(c)(7)(B)(iii). Third, Sun State Towers alleges that the denial runs afoul of the Act's prohibition of localities denying proposals based on the environmental effects of radio frequency emissions. (*Id.* ¶¶ 106-111); 47 U.S.C. § 332(c)(7)(B)(iv).

Both parties have moved for summary judgment. (Docs. 28, 30.) Sun State Towers asks for a declaration of its rights under 47 U.S.C. § 332 and an injunction requiring the Board to approve the Application for a special use permit. (Doc. 30 at 1.) The County requests that all claims be dismissed. (Doc. 28 at 6.)

In its motion (Doc. 30), Sun State Towers advances evidence that was never presented to the Board. It provides the Court with a detailed expert analysis that concludes the proposed site would fill a significant gap in coverage. (Doc. 30-1.) The analysis is based on Ookla crowdsource data, CellMapper data, Open Signal data, Verizon's regional radio frequency engineer, propagation maps, and a search ring—all tools that radio frequency engineers typically use to assess coverage. (*Id.* at 6-7.) The expert explains that the proposed site is the only site that would allow Sun State Towers to remedy the gap in coverage, particularly because the proposed tower would connect to a tower already approved by the County. (*Id.* at 11-12.) Sun State Towers also submits a declaration signed by Graham Chapman, a former Sun State Towers employee that worked on selecting the site. (Doc. 30-2.) The declaration explains why the proposed site was chosen, namely because of the gap in coverage and the lack of available alternatives. (*Id.*)

This Court now addresses the parties' motions (Docs. 28, 30), taking into

consideration that much of this information was absent from the Application provided to the Board in the first instance.

## II.  LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (holding the court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

## III.  DISCUSSION

### A.  Prohibition Claim

Sun State Towers moves for summary judgment in favor of its claim that the Board's denial violated the Telecommunications Act by prohibiting wireless services. (Doc. 30 at 2.) The Act provides that state and local governments may not "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). In *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 995 (9th Cir. 2009), the Ninth Circuit provides a two-part test for determining whether a local zoning authority is "prohibit[ing] or hav[ing] the effect of prohibiting" service coverage. The "'two-pronged analysis require[s] (1) the showing of a 'significant gap' in service coverage and (2) some inquiry into the feasibility of alternative facilities or site locations.'" *Id.*

#### 1.  The 2018 FCC Order

The parties disagree on whether a declaratory ruling issued in 2018 by the Federal Communications Commission abrogated the Ninth Circuit's two-part test. (Docs. 28 at

10-11, 30 at 8-10, 31 at 2-3, 32 at 5-6, 34 at 3-4); *In re Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.*, 33 F.C.C.R. 9088 (2018) (the "2018 FCC Order"). The 2018 FCC Order states that, to succeed on a prohibition claim, a plaintiff must show that a state or local requirement "materially limits" service coverage. 33 F.C.C.R. 9088 ¶ 35. The FCC explained that this "material inhibition" standard "is met not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities." *Id.* ¶ 37. The FCC definitively rejected a "coverage gap" standard because "a prohibition does not have to be complete or 'insurmountable' to constitute an effective prohibition." *Id.* ¶ 41. In doing so, the FCC reaffirmed *California Payphone*, the FCC Order that originally articulated the "material inhibition" standard. *Id.* ¶¶ 35, 37 (discussing *In the Matter of Cal. Payphone Ass'n Petition for Preemption of Ordinance No. 576 NS of the City of Huntington Park, Cal. Pursuant to Section 253(d) of the Communications Act of 1934 (California Payphone)*, 12 F.C.C.R. 14191 (1997)). The issue is whether and to what extent this order affects the Ninth Circuit's two-part test.

The County argues that the 2018 FCC Order only applies to small wireless facilities, meaning the Ninth Circuit's two-pronged standard still applies to Sun State Towers' request for a 195-foot cell tower. (Doc. 28 at 11.) The 2018 FCC Order indicates that it was issued specifically to regulate small wireless facilities. At the outset, the 2018 FCC Order opines that the order is issued because "new small cell deployments that have antennas often no larger than a small backpack . . . raise different issues than the construction of large, 200-foot towers." 33 F.C.C.R. 9088 ¶ 3. Moreover, the applicable portion of the 2018 FCC Order appears under the heading: "Overview of the Section 253 and Section 332(c)(7) Framework *Relevant to Small Wireless Facilities Deployment*." *Id.* ¶¶ 34-42 (emphasis added).

In *City of Portland v. United States*, 969 F.3d 1020, 1035 (9th Cir. 2020), the Ninth Circuit suggested that the 2018 FCC Order—referred to as the "Small Cell Order"—applies only to small 5G wireless facilities. In that case, several municipalities sought the court's

review of recent FCC orders related to telecommunications facilities, including the 2018 FCC Order. *Id.* at 1031. *City of Portland* primarily considered Section 253(a), but the court noted that Section 332(c)(7) "contains a limitation on local authority nearly identical to Section 253(a)" and that the court was "deal[ing] with issues pertaining to all of these provisions." *Id.* at 1033-34. Section 253(a) applies to telecommunications facilities while Section 332(c)(7) applies to personal wireless service facilities, but both contain identical language stating that localities may not "prohibit or have the effect of prohibiting" services. *Compare* 47 U.S.C. § 253(a) *with* 47 U.S.C. § 332(c)(7)(B)(i)(II). The congruence between the provisions led the FCC, in its 2018 order, to "resolve the conflicting court interpretations of the 'effective prohibition' language" specifically with respect to "continuing confusion on the meaning of Sections 253 *and* 332(c)(7)." 33 F.C.C.R. 9088 ¶ 35 (emphasis added). This Court applies the Ninth Circuit's interpretation of Section 253(a), and by extension Section 332(c)(7), in *City of Portland*.

The court in *City of Portland* begins by noting that the FCC "in 2018 . . . promulgated orders relating to the installation and management of small cell facilities." *Id.* at 1031. It held that "[t]he FCC has explained that [the material inhibition standard] applies a little differently in the context of 5G, because state and local regulation . . . is more likely to have a prohibitory effect on 5G technology than it does on older technology." *Id.* at 1035. The opinion then analyzes the validity of various provisions of FCC orders as applied to the deployment of small 5G wireless facilities, although those provisions are not applicable to the present case. *Id.* at 1036-47.

In any case, this Court is compelled to follow the Ninth Circuit's interpretation of the Act, not the FCC's. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 399 (2024) (holding that forcing courts to "afford binding deference to agency determinations . . . when a pre-existing judicial precedent holds that the statute means something else . . . is the antithesis of the time honored approach the [Administrative Procedure Act] prescribes"). The district court declines to unilaterally abrogate the Ninth Circuit's standard with respect to large towers until the Court of Appeals does so itself.

The FCC's determination as to what constitutes a prohibition of service coverage is specific to small wireless facilities.

Sun State Towers's 195-foot proposed tower is not a small wireless facility, defined by the 2018 FCC Order as a structure less than 50 feet tall or 10 percent of adjacent structures. 33 F.C.C.R. 9088, app. A, implemented as 47 C.F.R. § 1.6002. The Ninth Circuit's two-pronged test applies here. To succeed on its prohibition claim, Sun State Towers must show: (1) a "significant gap" in service coverage, and (2) that its proposal is the "least intrusive means" of filling the gap. *City of Anacortes*, 572 F.3d at 995.

### 2. Significant Gap in Coverage

The "significant gap" prong is satisfied when a provider "prevent[s] a wireless provider from closing a 'significant gap' in service coverage." *Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1056 (9th Cir. 2014). "'[S]ignificant gap' determinations are extremely fact-specific inquiries that defy any bright-line legal rule." *MetroPCS, Inc. v. City and Cnty. of San Francisco*, 400 F.3d 715, 733 (9th Cir. 2005). "[T]he relevant service gap must be truly 'significant' and 'not merely individual 'dead spots' within a greater service area.'" *Id.* at 733 n.10. Courts look to a number of factors, including a coverage gap's "effects on significant highways or railways, the nature of the area or number of potential customers, effects on commercial districts, and safety interests." *Los Angeles SMSA Ltd. P'ship v. City of Los Angeles*, No. LA CV16-04954, 2020 WL 13662046, at *18 (C.D. Cal. Sept. 1, 2020). A reviewing court may consider evidence beyond the administrative record available to the locality when making its decision. *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 22 (1st Cir. 2002); *VoiceStream Minneapolis v. St. Croix Cnty.*, 342 F.3d 818, 833 (7th Cir. 2003); *AT&T Mobility Servs. v. Vill. of Corrales*, 642 Fed.App. 886, 888-89 (10th Cir. 2016).

Sun State Towers presents a report authored by Steven Kennedy, a radio frequency engineering expert, which concludes that there is "a significant gap in the vicinity of the Proposed Site." (Doc. 30-1 at 6.) The conclusion is based on various forms of data and propagation maps of the area around the proposed site. (*Id.* at 6.) Sun State Towers included

propagation maps demonstrating a 250-square-mile gap in coverage. (Doc. 30-3 at 8; Doc. 29 ¶¶ 6, 12.) The County does not contest the significance of the coverage gap, instead focusing on Sun State Towers's obligation to make a prima facie showing that its proposal is the least intrusive means of filling the coverage gap, so there is no genuine issue of material fact. (Docs. 28, 32, 33.) Sun State Towers has satisfied the coverage gap prong.

### 3. Least Intrusive Means

In addition to demonstrating a significant coverage gap, a provider must "'show that the manner in which it proposes to fill the significant gap in services is the *least intrusive on the values that the denial sought to serve*.'" *City of Anacortes*, 572 F.3d at 995 (emphasis in original). "A provider makes a prima facie showing of effective prohibition by submitting a comprehensive application, which includes consideration of alternatives, showing that the [provider's proposal] is the least intrusive means of filling a significant gap." *Id.* at 998. A provider "has not borne its burden" if it fails to "offer[] a feasibility analysis of alternative designs or sites for [the locality] to reach its own conclusion." *Am. Tower Corp.*, 763 F.3d at 1056. If zoning authorities never receive or have the opportunity to consider a provider's feasibility analysis, "the applicant—rather than the locality—[becomes] the arbiter of feasibility and intrusiveness, gutting the 'least intrusive means' standard with predictable, applicant-friendly results." *Id.*

Sun State Towers did not provide an adequate feasibility analysis to the Board. Its application packet did not include any alternative designs or sites. (Doc. 29-1.) At the December 2, 2024, meeting, Sun State Towers's representative, John Kerr, did not say much to supplement the Application. When asked about alternative sites, Kerr stated, "we have looked at other sites in the area," that he "ha[s] taken this site over . . . maybe two or three weeks ago," and that "if he [did not] have super specific because [*sic*] [he] apologize[d] about that." (Doc. 29-4 at 54.) Kerr mentioned that three years before the meeting, Sun State Towers sent letters to landowners inquiring about building the facility. (*Id.* at 54-55.) When pressed again on whether there was "room for looking at additional sites," Kerr responded that "this is the one that we have approval from . . . the carrier to

proceed and . . . we've done our due diligence." (*Id.* at 55.) That is all Sun State Towers provided to the Board with respect to the possibility of building the proposed tower on an alternative site.

Sun State Towers did not supply "a comprehensive application, which includes consideration of alternatives." *City of Anacortes*, 572 F.3d at 998. Sun State Towers offered conclusions, not an analysis, and "[a] locality is not compelled to accept the provider's representations." *Id.* at 998. Beyond apprising the Board of his lack of knowledge about the site, he stated that Sun State Towers had "done [its] due diligence." (Doc. 29-4 at 55.) But the county supervisors are entitled to do theirs. If a provider does not share an analysis that "allows for a meaningful comparison of alternative sites . . . , the [locality] is entitled to judgment as a matter of law on the effective prohibition claim." *Am. Tower Corp.*, 763 F.3d at 1056-57. Because it did not present any substantive feasibility analysis to the County, Sun State Towers did not show that the proposed tower was the least intrusive means of filling the gap in coverage. As a matter of law, Plaintiff's prohibition claim fails.

### B.     Substantial Evidence Claim

Sun State Towers's second claim alleges that the Board's denial was not supported by substantial evidence in a written record. (Doc. 1 ¶¶ 97-105.) "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The Ninth Circuit concludes that "this language is meant to trigger the traditional standard used for judicial review of agency decisions." *Am. Tower Corp*, 763 F.3d at 1053 (internal quotation marks and citations omitted). "[W]hatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency [in the context of agency decisions] is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). A court's inquiry centers on the written record supplied by the locality. *See SEC v. Chenery Corp. (Chenery I)*, 318 U.S. 80, 95 (1943) (holding that the validity of an administrative order depends only on the basis articulated in the order itself). The written record must provide enough for the Court "to

identify the reason or reasons why the locality denied the application." *T-Mobile South, LLC v. City of Roswell, Ga.*, 574 U.S. 293, 300 (2015).

Substantial evidence consists of "more than a 'scintilla' but not necessarily a preponderance" of evidence. *City & Cnty. of San Francisco*, 400 F.3d at 725. It is "such relevant evidence as a reasonable mind might accept as adequate to support [a locality's] conclusion." *Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 726 (9th Cir. 2009) (quoting *City & Cnty. of San Francisco*, 400 F.3d at 724. The "standard is essentially 'deferential,' such that courts may 'neither engage in [their] own fact-finding nor supplant the [locality's] reasonable determinations." *City & Cnty. of San Francisco*, 400 F.3d at 725 (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2nd Cir. 1999)).

"[T]he substantial evidence inquiry does not incorporate the substantive federal standards imposed by the [Act]." *Am. Tower Corp.*, 763 F.3d at 1053 (internal citation omitted). Instead, "local and state zoning laws govern the weight to be given the evidence." *City & Cnty. of San Francisco*, 400 F.3d at 725. "[The Court] must take applicable state and local regulations as we find them and evaluate [a locality] decision's evidentiary support (or lack thereof) relative to those regulations." *Id.* at 724.  Here, the relevant Mohave County zoning ordinance states:

> [T]he following shall be considered in determining whether to issue a Special use Permit [for a wireless communication facility]: height proposed, proximity to other uses, historic sites, landmarks, vehicle traffic routes, medical facilities, air routes, topographical features, utilities, access and suitability of alternative sites.

Mohave County Ordinance, § 37.R(5)(d). Whether the Boards' denial was based on "substantial evidence" depends on whether, for the reasons stated in the written denial, Mohave County's zoning ordinances authorize the Boards' decision.

The Boards' reasoning for denying Sun State Towers's application is contained in Resolution No. 2024-245, stating that the resolution "shall serve as the written record required by the Act." (Doc. 29-5 at 6-7.)  It provides:

> [T]he Board of Supervisors of Mohave county who voted in favor of the denial, denied for the following reasons:
> > Public Concern of Mohave County Residents
> > Public Opposition at the Public Hearing
> > Proximity to Neighboring Residents
> > Poor Aesthetic Location to the Tower

(*Id.* at 6.) Although that list is short, the reasons provided in a locality's written record "need not be elaborate or even sophisticated, but rather, . . . simply clear enough to enable judicial review." *City of Roswell*, 574 U.S. at 302. From the list provided by the Board, "Proximity to Neighboring Residents" and "Poor Aesthetic Location to the Tower" are, on their own, legitimate reasons for denying the Application. Mohave County's zoning ordinances specifically permit the denial of an application based on considerations like "proximity to other uses," "landmarks," and "topographical features." Mohave County Ordinance, § 37.R(5)(d).

As for the denial's reference to public concern and opposition, the resolution explains that "the Board heard testimony and found substantial evidence in favor of the denial" at the December 2, 2024, Board of Supervisors meeting. (Doc. 29-5 at 6.) The resolution purports to incorporate the hearing testimony, and it links to Mohave County's website, containing a video of the public meeting along with the meeting's minutes. *Id.* Because the resolution identifies public concern and public opposition as reasons for its denial, and since the resolution explicitly incorporates the public's testimony into the resolution, the public's testimony is part of the written record that the Court takes into account in its substantial evidence inquiry. *See City of Roswell*, 574 U.S. at 295 (holding that a locality's "reasons need not appear in the written denial letter or notice provided by the locality" but instead "may appear in some other written record").

From the public's testimony, viewed in its entirety, one could reasonably determine that Sun State Towers's proposed site would be a poor aesthetic location and too close to neighboring residences, as stated by the County. The public raised legitimate concerns that support the County's denial, all authorized by the County's zoning ordinances.

A member of the public testified that a tall cell tower would negatively impact

property values because it would be visible whenever she went outside. (Doc. 29-4 at 52.) Another stated that the tower would be "massive" and an "unsightly intrusion into an absolutely beautiful and majestic environment of the valley." (*Id.*) Those considerations are authorized by the County's ordinance that permits the consideration of landmarks and the proposed facility's height. Mohave County Ordinance, § 37.R.(5)(d). The ordinance also contemplates consideration of "proximity to other uses," and members of the public commented on this too. *Id.* A participant at the hearing testified that he has worked to obtain approval from the Federal Aviation Administration, and now the County, to build an airstrip. (Doc. 29-4at 52-53.) He maintains that the tower would disrupt that airstrip. (*Id.* at 53.) Another participant concluded that "[a] cell tower does not belong in a residential neighborhood." (*Id.* at 54.)

The County can consider the tower's accessibility. (*Id.* at 52.) With respect to this, the public raised concerns about the inaccessibility of the proposed site due to a lack of proximity to power and maintained roads. (*Id.*) The reasons for the denial, listed in the resolution and provided in testimony, contain more than a scintilla of evidence "that a reasonable mind might accept as adequate to support [a locality's] conclusion." *City of Palos Verdes Estates*, 583 F.3d at 726 (internal citation omitted).

Sun State Towers cites several cases for the proposition that generalized concerns about aesthetics do not constitute substantial evidence. (Doc. 34 at 7.) Ninth Circuit precedent provides otherwise. In *City of Anacortes*, the locality's ordinance authorized consideration of factors much similar to those authorized under Mohave County's zoning code, including the height of a proposed tower, the proximity to residential structures and other uses, and the surrounding topography. 572 F.3d at 994. The Ninth Circuit held that these are aesthetic concerns, and they are "legitimate concerns for a locality." *Id.* In that case, "a number of residents claimed that [the proposed pole] would have a detrimental impact on the surrounding residential property, . . . and that it would interfere with residents' views." *Id.* at 994-95. This was held to be "more than a scintilla of evidence." *Id.* The Board incorporates similar evidence from the December 2, 2024, hearing into its

denial (Doc. 29-5 at 6), and that constitutes sufficient evidence to support the Board's denial. Plaintiff's second claim fails as a matter of law.

### C. Radio Frequency Emissions Claim

The parties' ask this Court to address the validity of Sun State Towers's final claim, which alleges that the Board unlawfully rejected the application based on concerns about possible adverse effects from radio frequency emissions. (Docs. 28 at 17-20; 30 at 19-22.) The Act bars local governments from "regulat[ing] the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions." 47 U.S.C. § 332(c)(7)(B)(iv). "[A]ny decision actually based on environmental effects is a violation, whether other legitimate reasons factored into the decision or not." *T-Mobile Northeast LLC v. Town of Ramapo*, 701 F.Supp.2d 446, 460 (S.D.N.Y. 2009). Sun State Towers argues that the public's focus on radio frequency omissions at the hearing and the limited reasoning in the Board's denial necessitate an inference that the Board denied the Application based on radio frequency emissions. (Doc. 30 at 19-22.)

Courts are concerned about a locality's reasons for denying an application, not the objections voiced by members of the public. *T-Mobile Ne. LLC v. Loudoun Cnty. Bd. Of Sup'rs*, 903 F.Supp.2d 385, 201 (E.D. Va. 2012) (finding that although "citizens did voice objections to the [proposed site] on the basis of health concerns, the Act does not prohibit citizens from expressing such concerns; it only prohibits the Board's acting on them"). It is not the Court's prerogative to look beyond the written reasons provided by the Board for the denial. *City of Roswell*, 574 U.S. at 303-04 (holding that a "locality need not worry that . . . a court will either find that it could not ascertain the locality's reasons or mistakenly ascribe to the locality a rationale that was not in fact the reason for the locality's denial").

To be unlawful, a locality's decision must conspicuously and unmistakably rely on radio frequency emissions in its denial. Courts have held that a partial reliance on radio frequency emissions runs afoul of Section 332(c)(7)(B)(iv), even if a legitimate consideration is presented as a pretext for that reliance. *See, e.g.*, *Cal. RSA No. 4. v. Madera*

*Cnty.*, 332 F.Supp.2d 1291, 1311 (E.D. Cal. 2003). A public opposition's focus on radio frequency emissions is not determinative. Courts look for an unambiguous indication that a locality based its decision on radio frequency emissions. *See, e.g., Town of Ramapo*, 701 F.Supp.2d at 460 466 (S.D.N.Y. 2009) (noting that "health concerns played a prominent role in community opposition," but relying on "the Town['s admission] that one of the . . . reasons for denying [the] application was that the proposal raised health concerns"). Although courts look beyond the locality's written reasons for its decision, there must be some undeniable indication that the locality based its decision on radio frequency emissions, such as an admission by a locality that it did so. *Id*; *AT&T Wireless Servs. of Cal. LLC v. City of Carlsbad*, 308 F.Supp.2d 1148, 1160 (S.D. Cal. 2003) (basing its finding on a statement by the locality's mayor that the health effects of radio frequency emissions were considered).

To be sure, all three members of the public who spoke at the hearing raised concerns about purported adverse effects of radio frequency emissions. (Doc. 29-4 at 52-54.) But there is no evidence that the Board itself discussed or was otherwise motivated by the public's concern about radio frequency emissions. The Board provided short but specific reasons for its denial. (Doc. 29-5 at 6.) Those reasons include legitimate considerations authorized by Mohave County's zoning ordinances, including aesthetics and the proposed site's proximity to neighboring residents. (*Id.*) Although the written denial incorporates the public's testimony at the hearing (*id.*), that does not necessarily mean the Board adopted the concerns raised by the public wholesale. Rather, the Board's written denial simply states that "the Board heard testimony and found substantial evidence in favor of the denial." (*Id.*) And as discussed, most of the public's testimony raised legitimate concerns that rise to the level of substantial evidence that supports the County's determination. *Supra* III.B.

*Madera County* is the closest case to ours. There, the court inferred that "complaints about property values were really a proxy for concerns about possible environmental effects of RFE's." *Madera Cnty.*, 332 F.Supp.2d at 1291. The inference was drawn in light

of counsel's concession that "the concerns regarding property values [could not] meaningfully be distinguished from a generalized fear of the possible environmental effects of EMF's." *Id.* at 1310. Here, all members of the public expressed concern about radio frequency emissions, but the record does not show that the plethora of other considerations raised at the Board's hearing, like concerns about the proposed tower's proximity to residential lots and a planned airstrip, were proxies for or otherwise traceable to radio frequency emissions. (Doc. 29-4 at 52-54.) For example, while one member of the public expressed concerns about a devaluation in surrounding property, she based that conclusion on the visibility of the tower. (*Id.* at 52.) Beyond urging the Court to draw an inference, Sun State Towers does not provide evidence that the Board relied on radio frequency emissions. Absent further evidence that the Board itself considered and based its denial on radio frequency emissions, the Court declines to infer that the Board adopted the public's statements regarding them. Plaintiff's third claim fails.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Summary Judgment (Doc. 30) is **DENIED**.

**IT IS FURTHER ORDERED** remanding the matter to Mohave County's Board of Supervisors to reconsider Sun State Towers' application for a Special Use Permit that would permit the construction of the proposed tower. The Board must consider, at a minimum, any further information submitted by Sun State Towers related to the feasibility of alternative sites.[*]

. . .

. . .

---

[*] At oral argument, counsel explained that the original application omitted information about a second tower that had been approved by the County that is intended to function with the rejected tower. To the extent Sun State Towers presents new evidence, the Board is encouraged to evaluate it in making its decision.

**IT IS FINALLY ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and close this case.

Dated this 25th day of November, 2025.

Michael T. Liburdi
United States District Judge